IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OVERSEAS HARDWOODS COMPANY, INC.,<br>    Plaintiff, | )<br>)<br>) |
| | ) |
| v. | )   **CIVIL ACTION NO. 19-00191-N** |
| | ) |
| HOGAN ARCHITECTURAL WOOD PRODUCTS, LLC, a/k/a HOGAN ARCHITECTURAL HARDWOODS LLC; M. DAVID HOGAN; BRENT UPSHAW; and BLAKE OGILVIE<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## ORDER

This action is before the Court on the Motion for Summary Judgment under Federal Rule of Civil Procedure 56, with separate memorandum and exhibits in support (Doc. 91), filed by Defendants Blake Ogilvie ("Ogilvie") and Brent Upshaw ("Upshaw"). Plaintiff Overseas Hardwoods Company ("OHC") has timely filed a response (Doc. 97), supported by exhibits (Doc. 96), in opposition to the motion, and Defendants have timely filed a reply (Doc. 98) to the response. The motion is now under submission (*see* Doc. 93) and is ripe for disposition.

With consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 9, 12, 33, 34). Upon consideration, the Court finds that Ogilvie and Upshaw's Motion for Summary Judgment (Doc. 91) is due to be **DENIED.**

## I.   Applicable Legal Standards

"A party may move for summary judgment, identifying each claim or defense-
-or the part of each claim or defense--on which summary judgment is sought. The
court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome
of the suit under governing law and it is 'genuine' if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund,
Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted).
"Summary judgment is only appropriate if a case is 'so one-sided that one party must
prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235
(11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986))
(citation omitted).  However, a " 'mere scintilla' of evidence is insufficient; the non-
moving party must produce substantial evidence in order to defeat a motion for
summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009)
(per curiam).  In other words, "there must be enough of a showing that the jury could
reasonably find for that party … Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is no genuine issue for
trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations
omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the

light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d 642, 646 (11th Cir. 1997) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.* (quoting *Blackstone v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where, as here, the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")).

Importantly, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed

abandoned.' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)). Relatedly, while "it may consider other materials in the record[,]" the "court **need** consider **only** the cited materials…" Fed. R. Civ. P. 56(c)(3) (emphasis added).

## II.   **Background**

The present motion seeks summary judgment on the fraud claims asserted against Ogilvie and Upshaw in Count III of the Second Amended Complaint (Doc. 19), the operative complaint in this action. Count III alleges that OHC, to its detriment, relied on misrepresentations made by Ogilvie and Upshaw in continuing to extend a line of credit that ultimately went unpaid. (*Id.*, PageID.120).

OHC is a manufacturer and importer of exotic and fine hardwoods, based in Mobile, Alabama, which often sells its products on credit. In April 2015, OHC began extending credit to Hogan Architectural Wood Products, LLC, a/k/a Hogan Architectural Hardwoods ("Hogan Architectural"). In October 2017, M. David Hogan ("David Hogan"), one of Hogan Architectural's owners,[1] approached Luckett Robinson, OHC's Vice President of Finance and General Counsel, and its chief credit decision maker, about OHC acquiring Hogan Architectural, but was told by Robinson that Hogan Architectural needed "equity and management help." (Doc. 96-4,

---

[1] Hogan Architectural and David Hogan were also defendants to this action, but OHC later voluntarily dismissed its claims against them. (*See* Docs. 84, 87). Only the Count III fraud claims against Ogilvie and Upshaw remain pending.

PageID.789).

In Spring 2018, OHC acquired the assets of a Texas-based lumber importer and distributor, Sitco, a large portion of which David Hogan expressed interest in buying. On May 16, 2018, David Hogan emailed Robinson to report that Hogan Architectural "took on two equity partners we [sic] in the past 30 days who help us with E-Commerce and general accounting and collections." (Doc. 96-6, PageID.805). Robinson requested an opportunity to meet these new "equity partners" – Ogilvie and Upshaw – before OHC would expand credit further, and an introductory meeting was held June 27, 2018, in Stockton, Alabama. The meeting began with a tour of OHC's plant and continued over lunch at the Stagecoach Café. It was at the lunch portion of the meeting that Ogilvie and Upshaw allegedly misrepresented to Robinson the extent of their investment in Hogan Architectural.

Per Robinson's deposition testimony, he "spent a lot of the lunch talking about [Ogilvie and Upshaw's] roles." (Doc. 96-1, PageID.756). Ogilvie and Upshaw told him that they owned "multiple businesses" in Louisiana, that Upshaw "would be managing all of the books of" Hogan Architectural, and that Ogilvie's "focus would be operations and ecommerce and website-type stuff." (*Id.*, PageID.753). It was represented that they had contributed a moulder, a rip saw, and conveyorization, representing "$50,000 of equipment," to the business. (*Id.*, PageID.756, 758). David Hogan also told Robinson, "and they agreed," that Ogilvie and Upshaw each had a 10% ownership stake in Hogan Architectural (*Id.*, PageID.755-756). Near the end of the lunch, Robinson asked each man "point-blank" "how much cash did [he] put into

the business." (*Id.*, PageID.756-757). "[W]ithout blinking an eye," Ogilvie and Upshaw each answered that he had invested $125,000. (*Id.*, PageID.757).2

Asserting that "Ogilvie and Upshaw constituted the answers to both the capitalization and management concerns that Luckett Robinson had relayed to David Hogan back in October 2017[,] (Doc. 97, PageID.860), OHC claims that it "[r]el[ied] on [their] representations of the $250,000 cash injection, $50,000 equipment investment, and ownership acquisition" in making the decision to extend additional credit to Hogan Architectural totaling $276,215.28, before Robinson ultimately cut off the credit line in September 2018. (Doc. 97, PageID.860).

In affidavits, Ogilve and Upshaw admit that they never invested $250,000 in cash in Hogan Architectural, as "[a]ny direct infusion of cash … would have been too risky and perilous to pursue due to [its] financial condition…" (Doc. 91-2, PageID.560; Doc. 91-3, PageID.562).3 Instead, on August 1, 2018 – a month and a half after the lunch meeting where the subject misrepresentations were made – they loaned Hogan Architectural a total of $230,000 through a limited liability company they formed with David Hogan Louisiana Lumber & Timber, LLC. (Doc. 91-2, PageID.560; Doc. 91-3, PageID.562; Doc. 96-7). They also did not have any ownership interest in Hogan

---

2 While OHC's brief also cites to a purported million-dollar line of credit Hogan Architectural purportedly had access to as an additional material misrepresentation, OHC also admits that this misrepresentation was made by David Hogan.

3 The undersigned acknowledges that Ogilvie and Upshaw also dispute that they "told Luckett Robinson … or any other person" that they would put $125,000 each into Hogan Architectural. (Doc. 91-2, PageID.560; Doc. 91-3, PageID.562). However, on summary judgment, the Court must accept non-movant OHC's evidence to the contrary.

Architectural, had only contributed $40,000 to the separate LLC, and had only purchased a used moulder for $5,000. (*See* Doc. 96-5, PageID.795-796; Doc. 96-7, PageID.806; Doc. 96-8, PageID.810).

Hogan Architectural was closed in December 2018 and its assets liquidated, with no payments made to OHC.

## III.   Analysis

Under Alabama law, " ' "[f]raud" is defined as (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of misrepresentation.' " *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014) (alteration added) (quoting *Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987)).[4] "To recover in a fraud action filed after March 14, 1997, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation." *Alfa Life Ins. Corp. v. Green*, 881 So. 2d 987, 991 (Ala. 2003) (per curiam) (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)). This "reasonable reliance" standard "was well-stated in *Torres v. State Farm Fire & Casualty Co.*, 438 So. 2d 757, 758–59 (Ala. 1983)[,]" *id.* at 991-92,[5] which held in

---

[4] The parties agree that the claims and causes of action at issue in this motion are governed by Alabama substantive law. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.").

[5] *See also Allstate Ins. Co. v. Eskridge*, 823 So. 2d 1254, 1264 (Ala. 2001), *as modified on denial of reh'g* (Dec. 14, 2001) ("Subsequent to *Foremost*, this Court has frequently applied the standard of reasonable reliance discussed in *Torres* to determine whether a claimant's reliance in a case alleging fraud was reasonable.").

relevant part:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.

> If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "*volunti non fit injuria*".

*Torres*, 438 So. 2d at 758–59 (citation and quotation omitted). Thus, "the reasonable-reliance standard imposes … on a plaintiff a 'general duty … to read the documents received in connection with a particular transaction,' *Foremost*, 693 So. 2d at 421, together with a duty to inquire and investigate." *AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008). " 'Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered.' " *Id.* (quoting *Gonzales v. U–J Chevrolet Co.*, 451 So. 2d 244, 247 (Ala. 1984)). "The 'reasonable reliance' standard … will allow the factfinder [to] determin[e] the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Foremost*, 693 So. 2d at 421.[6]

---

[6] Contrary to Ogilvie and Upshaw's assertions, a claim of fraud does not require that

Ogilvie and Upshaw argue that they are entitled to summary judgment on OHC's fraud claims because OHC cannot show that it "reasonably relied" on their alleged misrepresentations. They cite to evidence indicating that Hogan Architectural "was never a model customer" that frequently was late in its payments. (Doc. 91-1, PageID.551). However, OHC points to testimony by Robinson stating that Hogan Architectural, while "not always timely, … always paid everything" eventually, and that it was common for customers not to timely pay their bills to OHC. (Doc. 96-1, PageID.760).[7] And even if Hogan Architectural was not a model customer, a reasonable trier of fact could still find that OHC reasonably relied on Ogilvie and Upshaw's alleged representations to Robinson that they had made substantial capital contributions to, and had ownership interests in, Hogan Architectural, to determine that things were looking better for Hogan Architectural and that extending further credit to that business would be less of a risk – particularly given that they would have remedied concerns which Robinson himself had expressed to David Hogan previously.

a defendant have known his statements to be false, or that a plaintiff intended to act on the statements. *See Davis v. Sterne, Agee & Leach, Inc.*, 965 So. 2d 1076, 1091 (Ala. 2007) ("[A] false representation, even if made innocently or by mistake, operates as a legal fraud if it is a material fact that is acted upon with belief in its truth. Moreover, an innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment." (citations and quotation omitted)).

[7] Similarly, Joey Skinner, OHC's salesman, stated that while David Hogan "was slow on some things," he "was perfectly comfortable with" OHC's business dealings with Hogan Architectural. (Doc. 96-2, PageID.779-80).

Ogilvie and Upshaw also argue that the $230,000 in loans made to Hogan Architectural essentially fulfilled the representations they made to Robinson at the lunch meeting, and that they should not be faulted for Robinson misunderstanding what they actually intended to do. However, this asks the Court to view the evidence in a light more favorable to Ogilvie and Upshaw, rather than in the light most favorable to non-movant OHC, as the Court must when deciding a motion for summary judgment. Robinson's deposition testimony is clear that Ogilvie and Upshaw agreed with David Hogan that they each had a 10% ownership stake in Hogan Architectural, and represented that they had made substantial contributions of equipment to the business. Moreover, when Robinson asked them "point-blank" "how much cash did [they] put into the business," each answered $125,000. A reasonable trier of fact could find that Robinson reasonably interpreted Ogilvie and Upshaw's statements as representing they were direct investors in Hogan Architectural, rather than mere creditors. Ogilvie and Upshaw's own affidavits show they understand there to be a material difference between the two arrangements, expressing their belief that "[a]ny direct infusion of cash into [Hogan Architectural] would have been too risky and perilous to pursue due to [Hogan Architectural's] financial condition…" (Doc. 91-2, PageID.560; Doc. 91-3, PageID.562). Moreover, Robinson's October 2017 email to David Hogan had already expressed concerns about Hogan Architectural's lack of "equity and management help[,]" (Doc. 96-4, PageID.789), and Robison testified that Ogilvie and Upshaw's purported capital investment "was important because it really changed the capabilities of the company

and what they could charge for value-added service[,]" which Robinson believed Hogan Architectural "did not have the ability to provide" when he visited it in 2017. (Doc. 96-1, PageID.756). By representing to Robinson that they had directly invested substantial capital with Hogan Architectural – as Robinson testifies, and as the Court must accept as true on summary judgment – Ogilvie and Upshaw therefore made Hogan Architectural seem to be in less "risky and perilous" a financial situation that it actually was.

Finally, Ogilvie and Upshaw argue that Robinson should have done more than simply accept their assertions at the lunch meeting, either by asking for documentation to substantiate their claims, or by asking Ogilvie and Upshaw to guarantee Hogan Architectural's debt.  However, they cite no caselaw suggesting that "reasonable reliance" would require such actions as a matter of law, and the undersigned finds that OHC has presented sufficient evidence in opposition to the motion for summary judgment to submit that issue to a trial. *See McIver v. Bondy's Ford, Inc.*, 963 So. 2d 136, 142–43 (Ala. Civ. App. 2007) ("Whether a plaintiff has reasonably relied on a defendant's misrepresentation is usually a question of fact.").[8]

## IV.   Conclusion

[8] Ogilvie and Upshaw's invocation of Alabama's Statute of Frauds is a red herring. There is no indication that Robinson asked them to become guarantors of Hogan Architectural's debt at the lunch meeting, nor is OHC now claiming that Ogilvie and Upshaw should be considered guarantors. Rather, OHC is asserting that Ogilvie and Upshaw's alleged misrepresentations fraudulently induced OHC to extend further credit to Hogan Architectural. This is therefore not a situation where "the proof of a promise or contract, *void under the statute of frauds*, is essential to maintain the action…" *Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003) (quotation omitted).

In accordance with the foregoing analysis, it is **ORDERED** that Ogilvie and Upshaw's Motion for Summary Judgment (Doc. 91) is **DENIED.**[9]

**DONE** and **ORDERED** this 27th day of **August 2020**.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] This matter remains set for a final pretrial conference before the undersigned on September 16, 2020 at 10:00 a.m. (Doc. 88)